UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HAGAN, | ) | Case No.: 1:10 CV 241 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| SOLIDEAL TIRE, INC., | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending in the above-captioned case is Defendant Solideal Tire, Inc.'s ("Defendant") Motion for Summary Judgment (ECF No. 22). For the following reasons, the court grants the Motion.

## I.  FACTS AND PROCEDURAL HISTORY

Defendant hired Plaintiff on December 13, 2004, as a Service Manager. Defendant is a manufacturer and wholesaler of industrial tires. Plaintiff's duties included managing the service department, training staff, enforcing customer service standards, purchasing service department supplies, and supervising shipping and receiving operations. (Schentur Aff., ECF No. 22-1, ¶ 5.)

### A.  Plaintiff's Behavior at Work

On May 8, 2008, Raymond Schentur ("Schentur"), the Manager for Defendant's Cleveland branch, received a complaint from a customer regarding Plaintiff's behavior. The customer stated that Plaintiff used inappropriate language and that he did not want to use Defendant's services as a result. (Schentur Aff., ¶ 7.) Schentur asserts that when he notified Plaintiff of the customer's

complaint, Plaintiff indicated that he would not change his behavior and that Plaintiff called Schentur an "asshole." (*Id*. ¶ 8.) Schentur gave Plaintiff a "Final Written Warning" that stated that "should any further incidents occur again, disciplinary action will be taken, up to and including termination." (*Id*. ¶ 9.)

On July 15, 2008, Defendant provided Plaintiff with a letter stating that Plaintiff must attend a mandatary "anger/stress management program." (Schentur Aff., ¶ 10; *see also* Letter from Schentur to Hagan, ECF No. 22-10.) Defendant notified Plaintiff that if he failed to attend the anger management program, it "will result in further disciplinary action, up to and including termination." (*Id*.)

During the time of Plaintiff's employment, he signed two forms acknowledging that Plaintiff knew his employment was at-will. (Hagan Depo., ECF No. 22-3, at pp. 78-81.) The first stated Plaintiff understood the Employee Handbook of Solideal Tire, Inc. and that Plaintiff would abide by the rules within that Handbook. (ECF No. 22-5.) The Employee Handbook states that the "employment relationship is, and always will be, at-will. This means that you or Solideal USA may terminate your employemnt relationship at any time, for any reason, with or without cause and with or without notice." (ECF No. 22-7.) The second stated that, "**EMPLOYMENT BY THE COMPANY IS NOT FOR A DEFINITE TERM AND MAY BE ENDED BY YOU OR BY THE COMPANY AT ANY TIME, FOR ANY REASON.**" (ECF No. 22-6.)

Finally, Plaintiff admitted that his supervisor told him that his employment was at-will and that Defendant could terminate his employment. Specifically, Plaintiff stated, "[o]h, from day one they tell you that a lot. Basically, they threaten you with it at times . . . [my supervisor] told me that several times; not that he was threatening me with it, but he said it several times. . . . 'The company

can let you go whenever they want,' that was the normal thing [his supervisor] would say to me.." (Hagan Depo., ECF No. 22-3, at p. 82.)

### B.  Plaintiff's Injury

On June 27, 2008, Plaintiff told Defendant that he had sustained a workplace injury on December 28, 2007.  (Schentur Aff., ¶¶11-12; Injury Report Form, ECF No. 22-12.)  He filled out the Injury Report Form on June 27, 2008.  According to Defendant, Plaintiff worked full time and performed his typical job duties after his injury and after his filing for workers' compensation. (Schentur Aff., ¶¶ 11-12.)  However, Plaintiff maintains that he could not perform his job after his injury.  (Hagan Depo., at p. 363.)

How Plaintiff's injury occurred is not entirely clear.  Plaintiff describes the events in his Deposition.[1]  Plaintiff was hit by a tire bar.  (Pl.'s Depo., ECF No. 22-3, at p. 22.)  The "bar slipped out in between the towmotor and myself, came around and whacked me in the wrist, grabbed my muscle, smacked me in the shoulder and the neck."  (*Id*.)  Plaintiff fell.  He says in his deposition that "it was about 275, 300 pounds, threw me up over the tire onto the ground."  (*Id*.)  A coworker, Thom Hronis, saw Plaintiff lying on the ground.  Plaintiff told Hronis that he "got hit by the tire bar, and my arm is real numb and tingling."  (*Id*.)  Plaintiff said his arm was bloody and bruised and that he could not move it.  Plaintiff stated in his Injury Report Form that the "tire bar skidded across wrist to elbow area on left arm."  (ECF No. 22-12.)

### C.  Termination of Plaintiff's Employment

---

[1]	Only portions of Plaintiff's Deposition are on the Docket.  The portions are attached to Defendant's Motion for Summary Judgment.  It appears that some details of Plaintiff's workplace accident are explained on pages of the Deposition that are not on the record.

Plaintiff's brother, Chad Hagan, owns Hagan's Tire and is a retailer of general consumer tires. (Schentur Aff., ¶ 15). When Solideal could not provide what a customer needed, for whatever reason, Plaintiff would refer the customer to his brother or sell the customer tires through his brother's business. (*Id.*) Plaintiff was permitted to do this when it did not cost Solideal a sale or profit because Solideal could not make the sale itself. (*Id.*)

On February 2, 2009, Solideal received an order from a customer for six tires and two tire tubes. (Schentur Aff. ¶16; Price Aff., ECF No. 22-2, ¶ 3; Counseling Form, ECF No. 22-11.) Plaintiff delivered the tires, but when he returned from delivering the tires, Plaintiff returned with two tires and two tire tubes. (Schentur Aff., ¶¶16-18; Price Aff., ¶¶3-4; Counseling Form, ECF No. 22-11.) Stacy Price, the Customer Service Representative at Solideal's Cleveland branch, asked Plaintiff "why the two tires and two tubes were crossed off the order and not sold to" the customer. Plaintiff "responded that one of the [customer's] employees was on vacation and the employee accepting the order did not know if the two tires and tubes were ordered." (Price Aff., ECF No. 22-2, ¶ 3.) The next day, the customer who accepted the partial delivery of four tires called Solideal. The customer explained that "Plaintiff offered to cancel part of the order with Solideal and sell the customer other tires not owned by Solideal for less." (*Id.* ¶ 4.) Defendant maintains that this is the reason it terminated Plaintiff's employment.

Plaintiff admits that he sold the customer tires and tire tubes that belonged to his brother, rather than Solideal tires and Solideal tire tubes. (Hagan Depo., at pp. 220-284, 354.) Plaintiff maintains that in December 2008, while the customer was at Solideal's Cleveland branch, the customer agreed to purchase tires from Hagan's Tire the next time the customer needed tires. (Hagan Depo., at p. 220 ("All Terrain [the customer] had come in there, and they were picking up

-4-

some tires from Solideal that we actually had in[ ]stock of that same tire, the two that were on the

pallet. [The customer] said, 'Hey, listen' - - or I told him, I said, 'Hey, listen, we've got a pallet back

here of some tires that we brought in that are Chad's [Plaintiff's brother].  If you guys want to buy

them, let me know.  They're the same stuff that we have.'  He's like, 'Fine.'  So he's like, 'The next

time we put in this order for these 28, 15s, let us know, we'll buy those off Hagans.  I'll cut you a

check.  We'll have to set him up as a vendor.'").)  Thus, when the customer placed an order in

February 2009, Plaintiff remembered that the customer had previously agreed to buy the tires from

Hagan's Tire.  Plaintiff therefore sold the customer his brother's tires and tire tubes.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> A party may move for summary judgment, identifying each claim or
> defense–or the part of each claim or defense–on which summary
> judgment is sought.  The court shall grant summary judgment if the
> movant shows that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely

disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most

favorable to the non-moving party to determine whether a genuine issue of material fact exists.

-5-

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment."  *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id*.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford*

-6-

& *Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029,

1034 (D.C. Cir. 1988)).

### III.  LAW AND ANALYSIS

#### A.  Discrimination

Plaintiff alleges a violation of Ohio Revised Code Section 4112.99 (Compl., ECF No. 1-1,

at p. 2), which states: "[w]hoever violates this chapter is subject to a civil action for damages,

injunctive relief, or any other appropriate relief."  Ohio law provides that "[i]t shall be an unlawful

discriminatory practice . . . [f]or any employer, because of the . . . disability . . . of any person . . .

to refuse to hire, or otherwise to discriminate against that person . . . ."  O.R.C. § 4112.02(A). The

term "disability" is defined as:

> a physical or mental impairment that substantially limits one or more
> major life activities, including the functions of caring for one's self,
> performing manual tasks, walking, seeing, hearing, speaking,
> breathing, learning, and working; a record of a physical or mental
> impairment; or being regarded as having a physical or mental
> impairment.

O.R.C. §4112.01(A)(13).

In order to establish a prima facie case of disability discrimination pursuant to the Americans

with Disabilities Act[2] using direct evidence,

---

[2]    "Under Ohio law, to make a prima facie case of disability discrimination, a
plaintiff must show '(1) that he or she was handicapped, (2) that an adverse
employment action was taken by an employer, at least in part, because the
individual was handicapped, and (3) that the person, though handicapped, can
safely and substantially perform the essential functions of the job in question.'
*Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738, 739 (1996).
The Ohio Supreme Court has found that because the 'federal Americans with
Disabilities Act (ADA) is similar to the Ohio handicap discrimination law . . . .
[w]e can look to regulations and cases interpreting the federal Act for guidance in
our interpretation of Ohio law.'  *City of Columbus Civ. Serv. Comm'n v.*

> (1) [t]he plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452-53 (6th Cir. 2004) (quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186-87 (6th Cir. 1996)).

Where the plaintiff does not present direct evidence of discrimination and instead relies on indirect evidence, it is well-settled that discrimination claims are governed by the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Plaintiff is pursuing his discrimination claim by presenting indirect evidence, not direct evidence. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., ECF No. 24, at p. 3.) When a plaintiff seeks to establish his case of disability discrimination indirectly, then he must show that:

> (1) he . . . is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Hedrick*, 355 F.3d at 452-53 (quoting *Monette*, 90 F.3d at 1186-87). Once a prima facie case of discrimination has been shown through indirect evidence, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. *Talley,* 542 F.3d at 1105

----

> *McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206 (1998). Consequently, we consider the ADA and state law claims simultaneously by looking to the cases and regulations that interpret the ADA." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105, fn. 3 (6th Cir. 2008).

-8-

(citation omitted).  This is "merely a production burden."  *Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 532 (6th Cir. 2006).

If the defendant is able to meet this burden, the plaintiff must then show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination.  *Id.*; *Williams*, 161 F. App'x 526 at 531-32 (citation omitted).  Plaintiff can establish pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate Defendant's decision, or (3) was insufficient to warrant the challenged conduct.  *Id.* at 532 (quoting *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994)); *see also Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

### 1.  Prima Facie Case

Plaintiff maintains the following:

> Prong one is established because he is handicapped as a result of a work-related injury making him a member of [a] protected class. (See Hagan Deposition Transcript at 22-33 and 390-393). To be qualified under Prong two, most courts only require that the plaintiff show that they meet the objective hiring requirements of the position. *Medina v. Ramsey Steel*, 238 F. 2d 674, 681 (5th Cir. 2001). The Plaintiff has me[t] the objective hiring standards for the position he held with Defendant because Defendant actually hired him for the position. The Third prong of the test was satisfied when the Plaintiff was discharged from employment by Defendant. Finally, the circumstances surrounding his demotion give rise to an inference of discrimination because Defendant admits that it retained other employees and other employees assumed his duties thereby satisfying the Fourth prong of the *McDonnell Douglas* framework. The Plaintiff has provided enough evidence to meet the prima facie case. Plaintiff in his deposition testimony has refuted Defendant's alleged legitimate business reasons for Plaintiff's discharge.

(Pl.'s Resp. to Def.'s Mot. for Summ. Judg., ECF No. 24, at pp. 3-4.)

Defendant argues that Plaintiff is not disabled and that Plaintiff was not replaced by other employees.

### (a)  Disabled

In order to be classified as "disabled" under the ADA, a plaintiff must have a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2); *see also McKay v. Toyota Motor Mfg. U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997).  Under Ohio law, "[n]ot every physical or mental impairment constitutes a 'disability' within the meaning of the ADA, even though the person may have an impairment that involves one or more of his major life activities."  *Sheridan v. Jackson Township*, Sl. Cop., No. 08AP-771, 2009 WL 714081, ¶ 6 (10th Dist. March 19, 2009).  Thus, in order to be classified as disabled in Ohio, an individual must have "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Hammercheck v. Coldwell Banker First Place Real Estate*, No. 2007-T-0024, 2007 WL 4564398, ¶ 29 (Ohio App. 11 Dist. Dec. 28, 2007) (citation omitted).

Defendant maintains that the following list shows that Plaintiff is not disabled:

> • Plaintiff testified that he could sleep, care for his personal hygiene, drive his car, go to the gym and exercise, and gas his car. (Hagan T. 338-339, 340, and 373-376);
> • Plaintiff testified he was able to care for his 4-year old son by feeding him, getting him orange juice, changing his clothes, bathing him, brushing his teeth and taking him to school. (Hagan T. 338-340);
> • Plaintiff testified that he could complete many of the duties of his former position, including supervising the staff, training the staff, conducting performance reviews, ensuring customer standards were met, ensuring equipment and tools were in working condition, purchasing supplies and equipment, ensuring proper reporting regarding OSHA laws, truck maintenance laws, forklift logs, and

-10-

maintaining monthly statistics on service calls. (Hagan T. 342-345, 347-348, and 352-353);

• Plaintiff testified that he could drive a tow-motor. (Hagan T. 349);

• Plaintiff testified he exercises at the gym and bench presses 3 sets of 10 repetitions lifting over 100 pounds; exercises on the stair stepper for 15 minutes; exercises for 5 miles on an exercise bike; uses a sit-up machine and completes 200 sit-ups; completes 3 sets of 10 repetitions of pull downs at 115 pounds; and also sits in the sauna and swims. (Hagan T. 373 – 376);

• Plaintiff testified that he took a course driving truck [sic] to obtain his CDL license and that the course lasted approximately 2 months. (Hagan T. 381);

• Plaintiff testified that he took a course to operate heavy equipment which lasted 2-3 months. The course was hands-on and Plaintiff stated that "We were in them trucks; we were outside in the snow doing everything." Plaintiff is allowed to return to drive the heavy equipment and returned voluntarily and drove a "bobcat." (Hagan T. 381- 382).

Indeed, just days before his separation from employment, Plaintiff testified that he delivered and unloaded six (6) tires for a customer. (Hagan T. 235-236).

(Def.'s Mot. for Summ. Judg., ECF No. 22, at pp. 16-17.)

Quite literally all Plaintiff offers in response is: "[p]rong one is established because he is handicapped as a result of a work-related injury making him a member of protected class."  (Pl.'s Resp. to Def.'s Mot. for Summ. Judg., ECF No. 24, at p. 3.)  Plaintiff cites Hagan's Deposition at pages 22-23 and 390-393, in which Plaintiff describes how his injury occurred.  (Hagan Depo., at pp. 22-33 and 390-393).  Again, evidence of an injury is not necessarily the same as evidence of a disability.  *Sheridan*, 2009 WL 714081, ¶ 6.  Therefore, Plaintiff has set forth no facts to counter Defendant's showing that Plaintiff is not disabled.  Plaintiff consequently has not made a prima facie case of disability discrimination.

**(b)  Replaced**

Plaintiff acknowledged in his Deposition that he cannot establish that he was replaced or that his position remained open.  (Hagan Depo., at pp. 361-362.)  Hagan stayed that, "[t]o my understanding, I really don't know.  I think Ray [Schentur] pretty much fulfilled my job.  A couple of the guys called me and told me that Ray was doing both my job and his job." (*Id*., at p. 362.) Schentur states in his affidavit that Solideal has not replaced Plaintiff.  (Schentur Aff., ¶ 21.) Therefore, there is no genuine issue of material fact as to whether Plaintiff was replaced.  As a result, Plaintiff cannot show a prima facie case for disability discrimination through indirect evidence.

## 2.  Non-Discriminatory Reason for Discharge

Even if Plaintiff could put forth a prima facie case of disability discrimination, Defendant maintains that Plaintiff was discharged for undercutting Solideal by cancelling the sale of 2 Solideal tires and 2 Solideal tire tubes and then selling the customer the same size tires and tubes owned by his brother. (Schentur Aff. ¶¶ 16-20; Price Aff. ¶¶ 3-4; Counseling Form, ECF No. 22-11).  Plaintiff admits that he sold tires belonging to his brother.  (Hagan Depo., at pp. 220, 227, 284, and 353-354.) Nonetheless, Plaintiff argues that Defendant's legitimate reason is pretextual.  Plaintiff does not offer any evidence in support of this argument.  Therefore, the court finds that Defendant has put forth a non-discriminatory reason for the termination of Plaintiff's employment.

In any event, Plaintiff does not maintain that his disability is the primary reason for his termination.  In Plaintiff's Deposition, he was asked: "[s]o your discharge resulted because of your Workers' Comp complaint?" (Pl.'s Depo., ECF No. 22-3, at p. 25.)  Plaintiff responded:

> I think, yes, because the week I was granted for the surgery for the shoulder, I was terminated by the end of the week.  I think that was the main thing.  I think there was a couple things, but I think that was the main reason, 75 percent of the reason . . . I'm saying 75 percent of it. I think there's other issues.  I just found out I was diabetic the week before.  I was asking for a couple weeks off leave of absence.  I think there were several things that were involved.

-12-

(*Id*.) Notably, Plaintiff does not bring a claim for retaliation for filing for Workers' Compensation.

Furthermore, when asked to list the reasons Plaintiff believed caused his termination, Plaintiff stated:

> I think because I was diabetic and at the time I was having problems with the secretary, Stacy. We were arguing over things, certain things, and my relationship with Ray had gone from decent to horrible at that time. So I actually was wanting to get away from work for awhile to just recoup, and Ray was actually picking on me.

(*Id*.)

Therefore, not only can Plaintiff not show that Defendant's proposed reason for discharging Plaintiff was pretextual, Plaintiff does not even maintain that his disability was the primary reason for his termination. The court hereby finds that pursuant to the *McDonnell Douglas* burden-shifting standard, Defendant has proffered a non-discriminatory reason for terminating Plaintiff's employment, and Plaintiff has not shown that this reason is pretextual.

### B. Promissory Estoppel and Implied Contract

Pursuant to the employment-at-will doctrine, "the employment relationship between employer and employee is terminable at the will of either; thus, an employee is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg.*, 653 N.E.2d 381, 384 (Ohio 1995). There are two exceptions to the employment-at-will doctrine: "(1) the existence of implied or express contractual provisions which alter the terms of discharge; and (2) the existence of promissory estoppel where representations or promises have been made to an employee." *Id*. The employment relationship is presumptively at-will. *Id*. at 383; *Rudy v. Loral Defense Sys.*, 619 N.E.2d 449, 452 (Ohio App. 9 Dist. 1993).

### 1. Promissory Estoppel

Under a theory of promissory estoppel, Plaintiff must show: "(1) the existence of a clear and unambiguous promise (2) upon which one would reasonably and foreseeably rely, and (3) plaintiff

actually relied on the promise (4) to plaintiff's detriment." *Steele v. Mara Ents., Inc.*, Sl. Cop., No. 09AP-102, 2009 WL 3494847, ¶ 13. (Ohio App. 10 Dist. Oct. 29, 2009).

### (a) **Promise**

Defendant lists the following statements that Plaintiff claims were made to him:

> • Plaintiff claims that he was told generally that if he kept doing [what] he was doing his job would be secure. (Hagan T. 87);
> • Plaintiff claims that he was told by his manager that the branch could not run without him. (Hagan T. 88);
> • Plaintiff claims he was told that he would receive training at Solideal University and that he would receive sales training. (Hagan T. 88);
> • Plaintiff claims that his District Manager told Plaintiff he was doing a good job and to just keep doing it. (Hagan T. 93);
> • Plaintiff claims that the CEO told him he was doing a good job, keep up the good work, he was doing an awesome job and he wished Solideal had more like him. (Hagan T. 95);
> • Plaintiff claims that his District Manager told him that he had a future with the Company and that he was doing a good job. (Hagan T. 99, 102);
> • Plaintiff claims that another manager told him that if he ever wanted to transfer to another branch he could transfer to a branch in Pennsylvania. (Hagan T. 108);
> • Plaintiff claims that they praised him "like crazy." (Hagan T. 109);
> • Plaintiff claims that Bryan Hougen told him he was doing a good job and wanted to clone him. (Hagan T. 114).
> • Plaintiff claims that Thom Hronis told Plaintiff that he would go far in the company. (Hagan T. 118);
> • Plaintiff claims that Dan Griffin, an engineer, told Plaintiff that he did a good job, had a future with the Company and that he was an asset to the company. (Hagan T. 125-127).

(Def.'s Mot. for Summ. Judg., ECF No. 22, at pp. 9-10.)

These statements did not alter Plaintiff's at-will relationship. Praising an employee's work performance is insufficient to alter the at-will relationship. *E.g.*, *Snyder v. A.G. Trucking, Inc.*, 57 F.3d 484, 489 (6th Cir.1995) (The plaintiff was told that "there would be a place there [for him]. That [he] would be given every opportunity to . . . grow with the company. [He] was told about the retirement plan and could expect to be there until retirement."); *Clipson v. Schlessman*, 624 N.E.2d

-14-

220, 223 (Ohio App. 6 Dist. 1993) (Statements that the employee was "in a good position with the company" and he would "never have to worry about [his] job" are praise and discussions of future, not an employment promise.) (criticized on other grounds); *Daup v. Tower Cellular, Inc.*, 737 N.E.2d 128, 133 (Ohio App. 10 Dist., 2000) ("[S]tatements praising job performance or promising career advancement opportunities do not alter an at-will status." (citation omitted). Similarly, discussions about future opportunities for the employee do not alter the at-will relationship. *Taylor v. J.A.G. Black Gold Mgmt. Co.*, Sl. Cop., No. 09AP-209, 2009 WL 2940167, ¶ 14 (Ohio App. 10 Dist. Sept. 15, 2009) ("The promise at the heart of a promissory estoppel claim must consist of more than a commitment to the employee's future career development or a vague assurance of job security."); *Anders v. Specialty Chem. Resources, Inc.*, 700 N.E.2d 39, 41-42 (Ohio App. 8 Dist., 1997) (Statements of "secure future" and "secure career," are insufficient to establish implied contracts or promissory estoppel.); *Lake v. Wolff Bros. Supply, Inc.*, No. 63959, 1993 WL 462866, *3, 4, 7 (Ohio App. 8 Dist. Nov. 10, 1993) (The court granted summary judgment in favor of the defendant on the plaintiff's promissory estoppel claim even though the employer made the following statement to the employee: "if you do this well, you will have this position forever."); *Boggs v. Avon Products, Inc.*, 564 N.E.2d 1128, 1133 (Ohio App.1990) (In the context of a reprimand for excessive absenteeism, assurances by a supervisor that an employee's job would be secure if attendance improved did not alter at-will status.); *but see Pertz v. Edward J. DeBartolo Corp.*, 188 F.3d 508 (6thh Cir. Aug. 18, 1999) (holding that Pertz's promissory estoppel claim survived the defendant's motion for summary judgment because when Pertz asked the president of defendant's company whether it would be alright for him to change from a full-time to a part-time schedule, the president told Pertz that his job would be secure, and in reliance on that statement, Pertz changed his schedule).

-15-

**(b)  Reliance**

Even if Plaintiff could show that Defendant promised Plaintiff that he would work for a

longer period of time at Solideal than he did, Plaintiff cannot show that it was reasonable for him

to rely on the promise.  Plaintiff signed an employee handbook that states:

> **THE PROVISIONS DESCRIBED IN THIS HANDBOOK…ARE
> NOT INTENDED TO BE AND ARE NOT PROMISES OF
> EMPLOYMENT…  EMPLOYMENT  BY  THE  COMPANY  IS
> NOT FOR A DEFINITE TERM AND MAY BE ENDED BY YOU
> OR BY THE COMPANY AT ANY TIME, FOR ANY REASON.
> NOTHING CONTAINED IN THIS HANDBOOK IS INTENDED
> TO BE OR SHOULD BE INTERPRETED AS AN EXPRESS OR
> IMPLIED PROMISE OR COMMITMENT BY THE COMPANY
> TO CONTINUE THE EMPLOYMENT OF ANY INDIVIDUAL
> FOR ANY PERIOD OF TIME OR TO ALTER THE AT-WILL
> NATURE OF THE EMPLOYMENT RELATIONSHIP IN ANY
> WAY.**

(ECF No. 22-6.)  The handbook also states:

> Your employment relationship is, and always will be, at-will. . . . This
> at-will relationship also applies to, and cannot be changed by, other
> employment decisions made by Solideal USA in the normal course of
> business, such as promotions, production standards, subcontracting,
> changes in number of work hours, salary increases, or the sale,
> relocation, merger or consolidation of operations.
>
> No supervisor or manager has the authority to bind the Company to
> any employment contract, whether verbal or written, for any specified
> period of time with any associate, except that the Chief Executive
> Officer (CEO) may enter into written contracts of employment.

(Solideal USA Associate Handbook, ECF No. 22-7, at p. 2.)

Statements in an employee handbook that the employment is at-will mean that an employee

cannot reasonably rely on oral promises about the length of his or her employment.  *See Cox v.*

*Kettering Med. Ctr.*, No. 20614, 2005 WL 2327124, ¶ 29 (Ohio App. 2 Dist. Sept, 23, 2005) ("The

disclaimer [in the employee handbook] also prevents plaintiff from asserting promissory estoppel-no

-16-

promises were made to her other than that she could be terminated at will.").  When asked in his Deposition if he remembered what the acknowledgment said, Plaintiff stated, "I think it's just - - it's a contract that says, 'Solideal can terminate you at will.'" (Hagan Depo., ECF No. 22-3, at p. 81.) Plaintiff was asked whether he understood that he was employed at will and that Solideal could let him go whenever it wanted to at the time Plaintiff signed the acknowledgment.  Plaintiff responded, "[o]h, from day one they tell you that a lot.  Basically, they threaten you with it at times."  (*Id*. at p. 82.)

Other facts show that Plaintiff could not have reasonably relied on the purported promise that his employment would be for a longer term.  Plaintiff received written warnings that contained the express statement that further inappropriate conduct could result in his discharge. (Counseling Form, ECF No. 22-9 ("**Therefore, should any further incidents occur again, disciplinary action will be taken, up to and including termination.**"); Letter from Schentur to Hagan, ECF No. 22-11 ("Failure to comply with the above listed mandates will result in further disciplinary action, up to and including termination.").)  Plaintiff stated in his Deposition that Schentur told him that he could be discharged at any time.  (Hagan Depo., at p. 81 ("Oh, from day one they tell you that [your employment can be terminated] a lot.  Basically, they threaten you with it at times."); *Id*. at p. 82 ("Ray [Schentur] told me that several times; not that he was threatening me with it, but he said it several times.  'The company can let you go whenever they want,' that was the normal thing he would say to me.").)

Plaintiff claims that he relied on the purported promises and refrained from seeking other employment. (Compl., ¶ 6.)  However, under Ohio law, Plaintiff's failure to seek other employment does not constitute reliance to his detriment.  *Nilavar v. Osborn*, 711 N.E.2d 726, 737 (Ohio App. 2 Dist. 1998) ("Nilavar's failure to seek other employment cannot constitute detrimental reliance

to support his estoppel claim."); *Stickler v. Key Corp.*, 2003 WL 157388, ¶27 (Ohio App. 8 Dist. Jan. 23, 2003) ("Detrimental reliance does not exist where the promisee merely refrains from seeking other employment unless he rejects an offer.")

Plaintiff attempts to liken his case to *Wright v. Honda of America Mfg., Inc.*, 653 N.E. 2d 381 (Ohio 1995), in which "the Ohio Supreme Court upheld the denial of summary judgment for the employer based on evidence that the company altered the at-will relationship through assurances in its handbook, in progress reports and promotion letters, and oral representations by supervisory personnel." (Pl.'s Resp. to Def.'s Mot. for Summ. Judg., at p. 5.) *Wright* is distinguishable from this case. In *Wright*, the plaintiff was fired because she violated the defendant's anti-nepotism policy. In the defendant's employee handbook, it stated that direct relatives of other employees who worked in the same department would be transferred, not fired. Furthermore, two individuals who worked as management for the defendant stated that plaintiff had no reason to be concerned about being related to another employee because there were "other employees who retained their positions under similar circumstances." *Wright*, 653 N.E. 2d at 385. In this case, no one at Solideal authorized Plaintiff to sell tires from his brother's company to Solideal customers if Solideal also sold those same tires. Instead, Plaintiff was told that he could sell tires from his brother only if Solideal was unable to sell them. Plaintiff also knew that his employment could be terminated at will. Therefore, Plaintiff cannot reasonable rely on any of the promises by officials at Solideal that were allegedly made to him regarding future employment with that company.

Therefore, Plaintiff cannot meet any of the prongs of promissory estoppel as a matter of law. Summary judgment is therefore granted in Defendant's favor on the promissory estoppel claim.

## 2. Implied Contract

In order to prevail on his theory of implied contract, Plaintiff must show that there was a "'meeting of the minds' of the parties that the employment was other than at-will." *Callander v. Callander*, 2008 WL 2026431, ¶ 22 (Ohio App. 10 Dist. May 13, 2008).  Because there is a presumption that employment is at-will, "it is recognized that 'the party asserting an implied contract of employment has a heavy burden. . . . [Plaintiff] must prove the existence of each element necessary to the formation of a contract.'" *Daup v. Tower Cellular, Inc.*, 737 N.E.2d 128, 133 (Ohio App. 10 Dist. 2000) (citations omitted).  The employee must show "indications that the employer shared the expectation of continued employment." *Craddock v. Flood Co.*, 2008 WL 142443, ¶ 7 (Ohio App. 9 Dist. Jan. 16, 2008).

A disclaimer negates any inference of a contract between the parties.  *See Cox v. Kettering Med. Ctr.*, No. 20614, 2005 WL 2327124, ¶¶ 26-29 (Ohio App. 2 Dist. Sept, 23, 2005); *McIntosh v. Roadway Express, Inc.*, 640 N.E.2d 570, 574 (Ohio App. 12 Dist. 1994).  Defendant's at-will disclaimer, contained both in its handbook acknowledgment and handbook, makes Plaintiff's implied contract claim untenable. As noted above, Solideal's handbook acknowledgment, which Plaintiff signed, clearly provides that his employment with Solideal was at-will.  (Signature Page, ECF No. 22-6.)  Further, Solideal's employment handbook contains a similar "Employment Disclaimer" providing that his employment with Solideal was at-will.  (Solideal USA Associate Handbook, ECF No. 22-7, at p. 2.)

Therefore, the court hereby grants summary judgment in favor of Defendant on Plaintiff's implied contract claim.  In any event, as discussed in detail above, Plaintiff cannot show that Defendant intended to offer Plaintiff an employment contract that was not at-will.  Plaintiff's supervisor, Schentur, told him that he could be discharged at any time, and Plaintiff received written communications explaining that he could be discharged if he did not comply with certain policies.

-19-

## C.  Intentional Infliction of Emotional Distress

In order to prevail on a claim for intentional infliction of emotional distress, Plaintiff must show:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Locher v. Bagley*, No. 66981, 1995 WL 106134 *4 (Ohio App. 8 Dist. Mar. 9, 1995).

Defendant maintains that the conduct was not extreme or outrageous.  Extreme and outrageous conduct occurs "only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wiggins v. Waltz*, No. 74864, 1999 WL 777859, *4 (Ohio App. 8 Dist. Sept. 30, 1999) (citation omitted).  Termination of employment, without more, does not constitute outrageous conduct even when the employer knew that the decision was likely to upset the employee.  *Mendlovic v. Life Line Screening of Am., Ltd.*, 877 N.E.2d 377, 386 (Ohio App. 8 Dist. 2007).  An employer is not liable for an employee's emotional distress if the employer does no more than "insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Id.* (citing *Foster v. McDevitt*, 511 N.E.2d 403, 406 (Ohio App. 1986) (citation omitted).

Defendant argues that it discharged Plaintiff after he cancelled a customer's order and sold that customer the same tires from his brother's business.  The court has already found that this reason for termination is not pretextual.  It cannot be extreme or outrageous to terminate the

employment of someone who cancels an order of a Solideal customer and tries to sell that customer tires from another company.  Therefore, the court finds that Defendant did not act in an extreme or outrageous manner when it terminated Plaintiff's employment.  As Plaintiff must prove all four elements of the tort of intentional infliction of emotional distress, and as the court has found that he cannot prove the second element, the court need not analyze the remaining three elements.  The court hereby grants summary judgment in favor of Defendant on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the court hereby grants Defendant's Motion for Summary Judgment (ECF No. 22).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

August 8, 2011